342    ALLEN v. WEBB et al.    [Sept. T.,

Opinion of the Court.

# JOHN B. ALLEN

*v.*

# MALVINA A. WEBB *et al.*

SPECIFIC PERFORMANCE *of a verbal contract—degree of proof required.* It is the established doctrine of this court that before a court of equity will enforce the specific performance of a contract not in writing, it must clearly appear that a contract of sale was made, and its terms must be clearly proved.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. HANNAMAN & KRETZINGER, for the appellant.

Messrs. CRAIG & HARVEY, for the appellees.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was a bill in equity, brought May 23, 1871, by Malvina A. Webb and Luke, her husband, against John B. Allen, the father of Malvina, to enforce the specific execution of a parol contract to convey lands.

The bill alleges that March 1, 1859, Allen was seized in fee simple of a certain tract, describing it, and supposed to contain about 95 acres; that he then agreed with complainants that if they would build a house upon the premises, fence the same, put into cultivation all of it that was tillable, and reside upon the same, he would, upon compliance on their part, convey to said Malvina all the tillable land upon said premises, by a good and sufficient deed of conveyance; alleges acceptance of the offer, entry upon the land in the same month, building a house, fencing and putting the land into cultivation, under the agreement, and residing thereon. The

defendant, by his answer, denies the making of any agreement to convey, but sets up an agreement that they might improve and occupy, taking his timber, etc., to make the improvements, and have the use of the premises free of any charge.

Issue was taken upon the answer by replication, the cause heard upon pleadings and proofs, and a decree entered for specific performance.

The defendant brings the record to this court by appeal, and, upon errors assigned, urges that the decree was erroneous, on the ground that no contract sufficiently definite and certain to be capable of specific performance in equity was satisfactorily established by the evidence.

It is the established doctrine of this court that before a court of equity will enforce the specific performance of a contract not in writing, it must clearly appear that a contract of sale was made, and its terms must be clearly proved. *Hartwell* v. *Black*, 48 Ill. 301.

When we consider the nature of the jurisdiction to be exercised; that by the manner of its exercise the defendant is exposed to all the dangers and the very frauds which the Statute of Frauds and Perjuries was meant to guard against, and that it is not the province of the court to supply any thing wherein the contract, as made, is lacking, the reason of the rule requiring that a contract of sale be clearly established and its terms definitely shown by satisfactory evidence, is very apparent.

The plaintiff Malvina A. Webb, is the daughter of defendant, and testifies that the defendant promised that if they would go upon the land, build a house upon it, improve and fence the land, he would give her all the tillable land of the 95 acres. In another place, she said that she did not remember the language, but the substance was that he would deed her the tillable land if they would go on and improve it. She says that other members of the family were present at the time. The plaintiffs introduced Marion Allen as a witness,

who is also a daughter of defendant, who gives this version of the conversation: "He (defendant) said that if Malvina would go down there and improve it, he might, may be, sometime deed it to them; but he right away said he would not. He could see that it would not do; that he would sell it as soon as he got it in his possession; and that he might as well deed it to Webb as Malvina, his wife. He said it would cut him (defendant) off from his timber land if he was to deed it to him, so that he could not get to his timber."

The defendant squarely denies the agreement to deed it to Malvina, and he says that the promise which he did make was that if they would go on the land, improve and occupy it, he would give them the use of it, free of charge, so long as they chose to occupy.

The plaintiffs went upon the land in the spring of 1859, built a log house, dug well, set out fruit trees and constructed fences, and have continued in possession ever since, without any disturbance, or threat of disturbance, of their possession on the part of the defendant.

Now, if plaintiffs were strangers to defendant, these facts would strongly corroborate their theory of a promise to convey; but when we consider their relationship and all the circumstances, the fact of possession and making the improvements tend just as much to sustain the defendant's theory as theirs. It is an undisputed fact that before the plaintiffs went upon this place, and at the time of the arrangement under which they went upon it, they were living with their children at defendant's homestead, and evidently depending upon him more or less for assistance in procuring a livelihood. The proposition to them to give them the use of this land for a home, and free of charge, was a natural one for defendant to make and for them to accept. Defendant aided them, by the services of his sons and team, in building the house; furnished all the timber for all the improvements, assisted them in various ways, and always paid the taxes on the land. With this assistance and the use of a comfortable home, as long, at

least, as their father lived, and with the reasonable prospect that if, at his decease, this daughter did not get the same property, its improvement would add to the value of an estate of which she would get her due share, were sufficient inducements to them to go upon the property under the promise to have the use of it, free of charge, so long as they chose to occupy.

The contract to convey and its terms are not so clearly proved as to warrant a court of equity in decreeing a specific execution of it.

The decree of the court below will, therefore, be reversed and the bill dismissed without prejudice.

*Decree reversed.*