The Chicago and Eastern Illinois Railroad Company

*v.*

Abia Chipps.

*Opinion filed April 18, 1907.*

Specific performance—*clear proof of the contract is essential.* An alleged verbal agreement between a land owner and a railroad company with respect to the former executing a release of a covenant in the deed whereby the company acquired its right of way, will not be specifically enforced by a court of equity in the absence of clear and explicit proof establishing the contract.

Appeal from the Circuit Court of Moultrie county; the Hon. W. G. Cochran, Judge, presiding.

Eden & Martin, for appellant.

John E. Jennings, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

Appellee was the owner of a tract of land through which appellant's railroad was constructed, and in 1890 conveyed to appellant a strip of land one hundred feet wide across one eighty of a farm consisting of about three hundred and forty acres. There was a spring of water on the right of way conveyed to appellant, and the deed contained a covenant that appellant should "preserve the spring near the barn lot to the use of said A. Chipps by building a bridge or trestle one hundred feet in length over said spring, of a sufficient height and length on each side of said spring as will give ample room for a driveway, and said railway company agree to construct a cattle-way under their track or tracks at the ravine on the west side of the above described land, and shall construct a suitable farm crossing." The track was laid on trestle-work over the spring, and in driving piling for the construction of said trestle-work over said spring and driveway the flow of water from the spring was to some extent disturbed. In 1902 appellant, by its servants, filled up the trestle at the place where the spring was, covering the spring to a depth of several feet with earth, thereby destroying it. Appellee afterwards instituted an action at law in covenant to recover $2500 of appellant for the destruction of said spring. Within a few months after the institution of said suit two agents and employees of appellant called on appellee to confer with him about the controversy, and the appellant claims a mutual agreement was then entered into between appellee and appellant, through its said agents, by which the appellant was to establish a

spring near the site of the old spring and maintain a driveway and passage for cattle on the north side of said spring, and pay the costs of the suit in covenant and a reasonable attorney's fee for appellee's attorneys, and upon the performance of these agreements appellee was to execute a quit-claim deed releasing the complainant from liability to further preserve said spring and dismiss his action in covenant. The bill in this case was filed for the specific performance of said alleged agreement. The bill averred that appellant had established a new spring affording a good supply of water, had offered to pay the costs and attorney's fees in the covenant suit, and had requested appellee to execute the release and dismiss the action of covenant in accordance with the alleged agreement, but that he had refused to do so. The prayer of the bill was that the appellee be compelled by decree of the court to specifically perform the agreement. A demurrer to the bill was overruled, and defendant answered denying that he ever made any agreement with appellant, through its agents, that if appellant would provide him another spring or restore his water supply and maintain a passageway for him under appellant's tracks he would dismiss his action of covenant and execute a quit-claim deed releasing appellant from the obligations imposed upon it by the covenants in the deed to it from appellee for the right of way. Replication was filed to the answer, and the cause was referred to a special master in chancery to take the testimony and report his conclusions of law and fact.

The agreement which it is sought to compel the performance of was verbal, but appellee did not interpose the Statute of Frauds as a defense. By his answer he denied that any such agreement was ever made. The testimony taken before and reported by the master was somewhat voluminous, but much of it related to the flow of water produced by the spring before and after the building of appellant's railroad and as to how and by what means it was

claimed appellant had injured the spring and decreased the flow of water therefrom. This evidence showed that before the building of appellant's railroad said spring was of great value, producing a flow of water sufficient for several hundred head of stock; that this flow was disturbed but not materially decreased in the original construction of appellant's railroad, but that in 1902, by the filling in of the trestle, it was destroyed. This caused the action of covenant to be brought by appellee, which resulted in an interview between him and agents of appellant, at which the latter claims the agreement that it is seeking to compel the performance of was verbally made. The master found and reported, from the testimony, that no one was present at the time it was claimed said agreement was made except appellee and the two agents of appellant; that neither of said agents attempted in his testimony to give, literally or substantially, the language of appellee in making said agreement, but that their testimony on this subject consisted of their inferences, understandings and conclusion of what appellee agreed to; that while the testimony showed appellant had done substantially the things set up in its bill to restore a flow of water for appellee, he testified emphatically that he never agreed to release appellant from liability to preserve said spring. The master further reported that the appellee admitted he might have indicated a willingness to dismiss his suit for damages if the appellant would satisfactorily restore his water supply and pay the costs and attorney's fees incurred in said suit, and that the correspondence between complainant and attorney for appellee, which consisted of a number of letters that had passed between the parties, tended to show that the things appellant had done to restore the flow of water were done to induce appellee to dismiss his suit at law, and upon consideration of all the evidence the master found and reported that the agreement alleged in the bill had not been established by sufficient evidence; that the evidence on behalf of appel-

lant was too uncertain to authorize a finding that the agreement was made between the parties as alleged in the bill, and appellant having failed to make a case ·by the evidence sufficient to justify a decree in its favor, the master recommended that the bill be dismissed for want of equity. The court overruled exceptions to this report and entered a decree approving and confirming it and dismissing the bill. From that decree this appeal is prosecuted.

We have read from the abstract the testimony, including the correspondence between the appellant and appellee through his counsel, and are of opinion it wholly fails to make a case that would justify a decree in appellant's favor. There is no satisfactory testimony on the part of appellant that any such agreement as that set up in its bill was ever made by appellee. Appellant's witnesses do not testify in direct and positive terms that he did make such agreement, but after telling of their visit to him shortly after he brought his damage suit against appellant and of certain conversations with him relating to that matter and disposition of the suit if appellant would restore his water supply, gave it as their conclusion or understanding that upon the restoration of the water supply appellee would release appellant from the covenants in the deed requiring it to preserve the spring. We find no satisfactory evidence to justify such conclusions or inferences. Besides, appellee emphatically denies making the agreement. He testified he did not care to collect money from appellant; that what he wanted was his water supply restored and thereafter maintained, and that if appellant had done this he would have been willing to have dismissed his damage suit upon appellant paying the costs and his attorney's fees. He further testified that the flow of water had never been satisfactorily restored by appellant; that as ·restored the flow was too small and inadequate. The correspondence between appellant's representative and appellee's attorneys after the alleged agreement was made corroborates the testimony of appellee. The language in

letters written by some of appellant's representatives, six months after the alleged agreement was made, express a desire for a better understanding with appellee before appellant does anything more in the case, and inquiry is made of appellee's counsel if he (appellee) would be willing to execute a release to appellant of its obligation to maintain a bridge over the spring if the water supply was restored to his satisfaction. In response to one of these letters appellee's counsel wrote appellant he would not execute a release to the company from any part of the contract between them with reference to the spring. These and other portions of the correspondence, taken in connection with the appellee's positive and unequivocal testimony and the indefinite and uncertain testimony of appellant, clearly show this is not a case where a decree for specific performance would be justified.

While it has been held that although largely a matter in the sound discretion of the court, yet where all the necessary elements exist specific performance should be granted as a matter of right and not as a matter of favor, (*Evans* v. *Gerry,* 174 Ill. 595,) still it has uniformly been held that to justify the enforcement in equity of specific performance the contract must be "established by competent evidence, free from doubt or suspicion, clear and definite in its terms and founded upon a valuable consideration." (*Wolfe* v. *Bradberry,* 140 Ill. 578, and cases there cited.) In *Wallace* v. *Rappleye,* 103 Ill. 229, it was held specific performance of a verbal agreement respecting real estate would not be decreed except upon clear and explicit proof, leaving no room for reasonable doubt. Complainant's proof failed to come up to the standard required, and the circuit court properly approved the master's report and dismissed the bill, and its decree is affirmed.                              *Decree affirmed.*